**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JASON SANCHEZ,

        Plaintiff,

    v.                                            No.    23-CV-345

EDDY COUNTY BOARD OF COMMISSIONERS,
DETECTIVE JARED ROSTRO, in his individual capacity,
DETECTIVE ERIC THRELKELD, in his individual capacity, and
SHERIFF MARK CAGE, in his individual capacity,

        Defendants.

## COMPLAINT FOR DAMAGES

Plaintiff Jason Sanchez, by and through undersigned counsel, hereby files this Complaint for Damages and brings the following causes of action for damages against Defendant Eddy County Board of Commissioners ("Eddy County"), Defendant Jared Rostro, in his individual capacity, Defendant Eric Threlkeld, in his individual capacity, and Defendant Mark Cage, in his individual capacity (collectively referred to as "Defendants"), pursuant to the Fourth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. §§ 1983 and 1988, the New Mexico Tort Claims Act, NMSA 1978, § 41-4-1, *et seq.*, and state common-law claims.

## INTRODUCTION

Plaintiff was charged by Defendants with aggravated stalking and violation of a restraining order based on text and email communications to Jocelyn Calderon regarding their minor son. For two parents who do not get along well, the messages were occasionally hurtful or inappropriate, but never threatening. To prove Jason's specific intent to cause fear, Defendants submitted evidence about Ms. Calderon's subjective fear and how dangerous "domestic abusers" can be generally. However, absent any evidence of physical abuse or any actual threat to harm

1

Ms. Calderon physically in any way, Defendants failed to prove the requisite intent. Nevertheless, absent any evidence to indicate the requisite elements of the crimes, Defendants tried Plaintiff twice, once after a mistrial, and eventually convicted Plaintiff for these crimes, which resulted in 650 days of imprisonment. After years of appeals, Plaintiff obtained his innocence when the New Mexico Court of Appeals reversed the convictions on December 20, 2022. Upon remand, the state district court dismissed the criminal case with prejudice on February 2, 2023.

## **PARTIES**

1.      Plaintiff Jason Sanchez is a citizen of Texas, and was at all relevant times, imprisoned in New Mexico for the criminal charges and convictions that gave rise to this action.

2.      Defendant Eddy County is located in Eddy County, New Mexico. Defendant Eddy County maintains the Eddy County Sheriff's Office ("ECSO") and employs, and employed at all relevant times, Defendant Jared Rostro, Defendant Eric Threlkeld, and Defendant Mark Cage.  At all relevant times, Defendant Eddy County through the ECSO employed, retained, trained, and exercised direct supervisory control over Defendant Jared Rostro, Defendant Eric Threlkeld, and Defendant Mark Cage. At all relevant times, Defendant Eddy County was acting under the color of state law.

3.      At all relevant times, and upon information and belief, Defendant Jared Rostro is, and was at all relevant times, a resident of Eddy County, New Mexico. Defendant Rostro was a full-time salaried law enforcement officer employed by Defendant Eddy County as an ECSO deputy. Defendant Rostro was a public employee as that term is defined in the New Mexico Tort Claims Act (NMSA 1978, §§ 41-4-3(D) and (F)(2)) and was acting under color of law within the

course and scope of his duties and employment. Defendant Rostro is sued in his individual capacity.

4.        At all relevant times, and upon information and belief, Defendant Eric Threlkeld is, and was at all relevant times, a resident of Eddy County, New Mexico. Defendant Threlkeld was a full-time salaried law enforcement officer employed by Defendant Eddy County as an ECSO deputy. Defendant Threlkeld was a public employee as that term is defined in the New Mexico Tort Claims Act (NMSA 1978, §§ 41-4-3(D) and (F)(2)) and was acting under color of law within the course and scope of his duties and employment. Defendant Threlkeld is sued in his individual capacity.

5.        Defendant Mark Cage is, and was at all relevant times, the Sheriff for ECSO, in charge of hiring, training, supervising, and retaining Defendant Jared Rostro, Defendant Eric Threlkeld. Defendant Cage is, and was at the relevant time, and employee, agent, or otherwise under the supervisory control of Defendant Eddy County. Defendant Cage is the policymaker at ECSO. At all relevant times, Defendant Cage was acting under the color of law within the scope of his duties and employment. Defendant Cage is sued in his individual capacity.

## JURISDICTION AND VENUE

6.        This is a civil action authorized by 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 (a)(3). This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

7.        The United States District Court for the District of New Mexico is an appropriate venue under 28 U.S.C. § 1391(b)(2) because it is where the events giving rise to this claim occurred.

8.    In connection with Plaintiff's state law claims, all the acts complained of herein come within the scope of a waiver of immunity contained within the New Mexico Tort Claims Act, NMSA 1978, § 41-4-12. Plaintiff timely filed a notice of tort claims with Defendant Eddy County when Plaintiff's conviction was reversed by the New Mexico Court of Appeals. Plaintiff brings these claims against all Defendants and seeks vicarious liability against Defendant Eddy County.

## FACTUAL ALLEGATIONS

### I.    Background and Plaintiff's Relationship with Ex-Girlfriend

9.    Plaintiff met his ex-girlfriend, Jocelyn Calderon, in 2014 in Carlsbad, New Mexico.

10.    After a number of months, they were sexually intimate.

11.    When Ms. Calderon learned she was pregnant, she made the decision to co-parent with Plaintiff, but was clear she did not want a romantic relationship with him.

12.    Their minor son was born on August 21, 2015.

13.    Plaintiff and Ms. Calderon attempted to co-parent their son, but soon after their son was born, a legal custody dispute began.

14.    Under case number D-503-DM-2015-509, the original custody decree incorporating a parenting plan was modified repeatedly over the years.

15.    A March 2017 order was put into place which narrowly modified custody terms to require alternating custody exchanges in New Mexico and Texas, and allowing the non-custodial parent to contact his son "by Facetime, Skype or other similar platform on Mondays, Wednesdays and Saturdays for not more than twenty (20) minutes at 7:00 p.m. Mountain Standard Time."

16.     Ms. Calderon acknowledged that the March 2017 order modified only specific issues and not the entire mediated agreement or all prior orders.

17.     On November 1, 2017, a New Mexico Fifth Judicial District Court Judge issued a temporary order of protection (hereinafter "restraining order") prohibited Plaintiff from, among other things, "telephon[ing], talk[ing] to, visit[ing], or contact[ing Calderon] in any way, except . . . [a]s allowed in the domestic matter."

18.     Plaintiff's charges were based on communications he directed to Ms. Calderon on November 27, 2017.

## II.     Investigation and Arrest

19.     On November 27, 2017, Plaintiff called Ms. Calderon's phone twice for unknown reasons.

20.     Plaintiff also texted Ms. Calderon four times: twice about changing the designated time to call the child; once about the child's new haircut; and once to inform her that he had withdrawn motions in the domestic matter.

21.     Defendant Rostro's began investigating the crimes against Plaintiff by first speaking with Ms. Calderon.

22.     This conversation did not provide Defendant Rostro with any evidence that Plaintiff was committing aggravated stalking or violating the restraining order because Plaintiff never intended to put Ms. Calderon in any fear of any harm and Plaintiff did not knowingly violate the restraining order—he was merely attempting to talk to Ms. Calderon as allowed by the restraining order.

23.     Next, Defendant Rostro also talked to Plaintiff to discuss the situation. The conversation resulted in the same evidence, or lack thereof, that Ms. Calderon provided to Defendant Rostro.

24.     Prior to even looking at the restraining order, Defendant Rostro had already made up his mind about arresting Plaintiff by stating to him during the interview that he should "not call [Ms. Calderon] again, [and] that he already violated the order."

25.     It was not until after speaking to both Plaintiff and Ms. Calderon that Defendant Rostro decided to retrieve the restraining order. At this point, Defendant Rostro should have ended the investigation because the restraining order allowed the interactions that Plaintiff had or attempted to have with Ms. Calderon.

26.     Despite this, Defendant Rostro proceeded with his investigation and proceeded to take two domestic violence lethality screenings of Ms. Calderon.

27.     Ms. Calderon answered questions in the lethality screening that would provide Defendant Rostro with an understanding of Ms. Calderon's subjective fear.

28.     Defendant Rostro acknowledged that the answers were all self-reported by Ms. Calderon and that Defendants did not attempt to investigate or ask Plaintiff about them.

29.     In fact, Ms. Calderon was inconsistent in the second screening where she changed her answer to one of the questions. Ms. Calderon changed her answer about whether Plaintiff had access to a gun, answering "no" in the second screening.

30.     Despite this inconsistency, Defendant Rostro filed the criminal complaint against Plaintiff rather than conducting further investigation into Ms. Calderon's inconsistency.

31.     On June 27, 2018, Defendants Eddy County, Rostro, Cage, and Threlkeld charged Jason Sanchez with aggravated stalking (violation of restraining order) and a separate count for violating a restraining order.

32.     Defendants Eddy County, Rostro, Cage, and Threlkeld failed to allege in the criminal complaint, and on the affidavit for the arrest warrant that was filed that same day, any facts sufficient to demonstrate a violation of the crimes brought against him, and thus, lacked any probable cause and substantial evidence to charge and arrest Plaintiff.

33.     The arrest warrant lacked probable cause to arrest Plaintiff because it was not based on substantial evidence that Plaintiff committed the crimes of aggravated stalking and violating a restraining order.

34.     Defendants Rostro, Cage, and Threlkeld actively participated in the arrest by conducting the investigation, or lack thereof, writing and approving the criminal complaint and arrest warrant affidavit, and by contacting Plaintiff's parole officer in Texas to have him detain and arrest Plaintiff for his extradition to New Mexico.

**III.    Charges and Conviction**

35.     The arrest warrant did not have any mention of Plaintiff's intent to violate the restraining order or that Plaintiff intended to put Ms. Calderon in reasonable fear of harm as enumerated in state law. *See* NMSA 1978, § 30-3A-3(A) (2009) (stalking consists of intending to "place the individual in reasonable apprehension of death, bodily harm, sexual assault, confinement or restraint of the individual or another individual.").

36.     At the time that Plaintiff was charged with these crimes, Plaintiff resided in Texas.

37. On September 28, 2018, after the warrant was filed, Plaintiff was arrested in San Antonio, Texas and extradited to New Mexico because of the arrest warrant filed by Defendants. Plaintiff was extradited while on probation in Texas due to unrelated charges and convictions.

38. Plaintiff was forced to leave his life and employment in Texas to be imprisoned and prosecuted in New Mexico for the charges brought against him by Defendants.

39. The case proceeded to trial about a year later.

40. After a mistrial at the initial trial, Plaintiff was convicted for these charges in the New Mexico Fifth Judicial District Court in a retrial on July 9, 2020, over two years after Defendants filed criminal charges against Plaintiff.

41. For aggravated stalking, he was sentenced to prison for 18 months, awarded 18 months of presentence confinement credit, and granted a one-year parole term.

42. For violation of a protection order, he was sentenced to 364 days of prison, awarded 20 days of presentence confinement, and granted probation for 284 days.

**IV.** **Appeal and Reversal of Convictions**

43. As a result of the injustice that Plaintiff endured, he sought to right this wrong by appealing his conviction.

44. Plaintiff timely appealed his convictions to the New Mexico Court of Appeals.

45. In appellate briefs, and as noted by the New Mexico Court of Appeals, the State conceded that that it failed to prove the charges against Plaintiff beyond a reasonable doubt.

46. The State explicitly stated in appellate briefs that the lack of evidence in Plaintiff's criminal case was "fatal."

47.     Therefore, the New Mexico Court of Appeals reversed Plaintiff's convictions because the State conceded that it failed to prove the charges beyond a reasonable doubt and there was insufficient evidence to convict Plaintiff.

48.     The New Mexico Court of Appeals noted that the order of protection did not prohibit Plaintiff from contacting Ms. Calderon if allowed in the domestic matter.

49.     The only exhibit admitted into evidence at trial that related to the domestic matter was the State's Exhibit 1—an order modifying the times for visitation exchanges and calls between Plaintiff and the child.

50.     The New Mexico Court of Appeals held that this order "had no bearing on communications between the parents." And there apparently were other court orders in the domestic matter, including a parenting plan, which governed communications between Plaintiff and Ms. Calderon, that were not introduced into evidence at trial.

51.     This evidence that was not introduced at trial would have cleared Plaintiff from any wrongdoing, but Defendants decided to prosecute Plaintiff, nonetheless.

52.     Defendant Eddy County, Defendant Rostro, and Defendant Cage knew they did not have sufficient evidence to convict Plaintiff and thus took the strategy of having Defendant Threlkeld testify as an expert of domestic violence against Plaintiff.

53.     Moreover, Defendant Eddy County, Defendant Rostro, Defendant Threlked, and Defendant Cage knew that the restraining order did not prohibit the communications made by Plaintiff. For example, Ms. Calderon testified that aspects of the parenting plan were not affected by State's Exhibit 1 and that it was permissible under the parenting plan for the parents to request changes with respect to the child.

54.     Based on this testimony, at least two of Plaintiff's text messages (those about changing the time for Plaintiff to call the child) were explicitly permitted in the domestic matter and therefore not a violation of the order of protection.

55.     As for Plaintiff's other text messages and unanswered phone calls, in the absence of evidence concerning the nature of the phone calls and what communications were allowed in the domestic matter, and the State conceded that to convict Plaintiff, the jury would have had to impermissibly resort to speculation and conjecture.

## V.     Defendants' Motivations and Policies/Customs

56.     Upon information and belief, Defendant Rostro and Ms. Calderon had a close relationship prior to and during the prosecution of Plaintiff.

57.     As a result of this close relationship, Defendant Rostro was aware of Plaintiff and the tumultuous relationship he had with Ms. Calderon.

58.     Defendant Rostro decided to prosecute Plaintiff because he was aware of the tumultuous relationship, and this, in combination with his close relationship with Ms. Calderon, made him strongly dislike Plaintiff.

59.     Defendant Rostro also communicated the tumultuous-relationship situation to Defendant Threlkeld and Defendant Cage, and as a result Defendant Threlkeld and Defendant Cage strongly disliked Plaintiff to the point that they decided to arrest, prosecute, and imprison Plaintiff.

60.     In many efforts by Plaintiff to prove his innocence, Plaintiff requested that ECSO conduct an investigation into his potential arrest—Plaintiff became aware of the warrant to arrest him for this case when he was on probation in Texas.

61.     Defendants did a self-policing investigation finding no wrongdoing.

62. Plaintiff continuously insisted that he was innocent, but Defendants became angry and annoyed by Plaintiff's requests to investigate the matter.

63. In an email from Defendant Cage to Plaintiff, where Defendant Rostro and Defendant Threlkeld were copied, Defendant Cage demonstrated the malice towards Plaintiff held by Defendant Cage, Defendant Rostro, and Defendant Threlkeld. The email contained the following statements:

> I have grown weary of your illiterate as[s,] baseless accusations[,] against my detectives. You are an accused criminal with a valid warrant for your arrest pending […]
>
> You will be arrested shortly and then you can attest to your guilt or innocence […]

64. Defendant Cage and Defendant Eddy County maintain a written "pro-arrest" policy (as stated in the Standard Operating Procedure & Policy, OPR 17. Domestic Violence: "It is the policy of the Eddy County Sheriff's Office to implement a proactive, pro-arrest strategy when addressing domestic violence cases") which directs the arrest and prosecution of any alleged violations of a restraining order.

65. As a result of this policy, Defendant Cage and Defendant Eddy County have a custom of arresting individuals without probable cause of a violation of a restraining order.

66. As a result of this policy, Defendant Cage and Defendant Eddy County have a custom of arresting and prosecuting individuals without sufficient evidence to convict a person for violating a restraining order.

67. Defendant Cage and Defendant Eddy County have a custom and/or policy of negligently training and supervising their deputies to properly investigate a potential violation of a restraining order, and properly read a restraining order, because of their "pro-arrest" policy.

This creates an "arrest first and ask questions later" situation that violates individuals' civil rights, including Plaintiff's as it occurred in this case.

68.     Defendant Cage and Defendant Eddy County have a custom and/or policy of negligently hiring unqualified and/or dishonest individuals for open law enforcement positions at the ECSO, specifically, detective positions.

69.     Defendant Cage's and Defendant Eddy County's policies and/or customs resulted in the arrest, prosecution, and imprisonment of Plaintiff.

70.     Defendant Cage is the policymaker for Defendant Eddy County and the ECSO.

71.     Defendant Cage approved all policies and/or customs that resulted in the violations of Plaintiff's constitutional rights.

## VI.     Defendants' Background and Conduct

72.     Prior to his employment at the ECSO, Defendant Rostro was a United States Customs and Border Protection ("CBP") Agent. He was never a detective for CBP prior to his employment at ECSO and was not trained as such.

73.     Prior to being hired by ECSO, Defendant Rostro was given a polygraph examination by ECSO where it was found that Defendant Rostro was dishonest.

74.     For example, the polygraph examiner found that Defendant Rostro stole from CBP a GPS unit, ammunition, knives, pepper spray, and batons. Prior to being employed by CBP, Defendant Rostro also stole from D.W. Turner, his former employer. Defendant Rostro also was reprimanded by CBP for viewing and forwarding pornographic content while at work.

75.     Defendants Rostro and Threlkeld have been disciplined for dishonest conduct while employed at ECSO such as making personal purchases with government funds and abusing their law enforcement powers. For example, both have been disciplined for making

personal purchases with government funds. Defendant Rostro has been disciplined for running the license plate of his ex-wife's boyfriend's vehicle to stalk him, he did not properly follow procedures when providing a urine sample to return to work, and he was criminally investigated for potential crimes committed against his ex-wife.

76. Despite these instances that seriously question their character, credibility and honesty, Defendants Eddy County and Cage continued to employ Defendant Rostro and Threlkeld.

77. Upon being released from jail, Plaintiff moved to Texas again and obtained employment.

**VII.**    <u>**Impact on Plaintiff**</u>

78. Due to his imprisonment, Plaintiff's son does not speak to him and missed out on crucial formative years where Plaintiff could have helped raise his son.

79. While imprisoned, Plaintiff was subjected to ridicule and instance of use of force by correctional officers.

80. Plaintiff had to pay lawyers to resolve the criminal case, and any issues that arose by not being able to provide for his son while imprisoned.

81. Plaintiff has also had to get lawyers to try to get legal custody of his son after being incarcerated.

82. Plaintiff lost two years of his life in jail, spent three years fighting this wrongful conviction, lost out on income from gainful employment, and the conviction damaged the relationship with his son.

**COUNT I**
**FOURTH AMENDMENT CLAIM AGAINST ALL DEFENDANTS**
**(MALICIOUS PROSECUTION)**

83.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

84.     At all relevant times, Defendants Eddy County, Rostro, Threlkeld, and Cage were acting under color of state law.

85.     Defendants Eddy County, Rostro, Threlkeld, and Cage caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Plaintiff's favor in a manner indicative of innocence.

86.     Defendants Eddy County, Rostro, Threlkeld, and Cage accused Plaintiff of criminal activity knowing those accusations to be without probable cause, and they made statements to prosecutors with the intent of exerting influence to institute and continue the judicial proceedings.

87.     Defendants Eddy County, Rostro, Threlkeld, and Cage made statements regarding Plaintiff's alleged culpability that were false and were made with knowledge that said statements were false and perjured.

88.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff.

89.     As a result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including pain and suffering.

### COUNT II
### FOURTH AMENDMENT CLAIM AGAINST ALL DEFENDANTS
### (UNLAWFUL ARREST)

90.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

91.     Plaintiff has, and had, a Fourth Amendment right to be free from unreasonable searches and seizures.

92.     At all relevant times, Defendants Eddy County, Rostro, Threlkeld, and Cage were acting under color of state law.

93.     Defendants Eddy County, Rostro, Threlkeld, and Cage unlawfully arrested Plaintiff without probable cause.

94.     Defendants Eddy County, Rostro, Threlkeld, and Cage obtained an invalid arrest warrant that was not supported by probable cause and/or substantial evidence of any crime.

95.     Defendant Cage and Defendant Eddy County maintain a written "pro-arrest" policy (as stated in the Standard Operating Procedure & Policy, OPR 17. Domestic Violence: "It is the policy of the Eddy County Sheriff's Office to implement a proactive, pro-arrest strategy when addressing domestic violence cases") which directs the arrest and prosecution of any alleged violations of a restraining order.

96.     As a result of this policy, Defendant Cage and Defendant Eddy County have a custom of arresting individuals without probable cause of a violation of a restraining order.

97.     As a result of this policy, Defendant Cage and Defendant Eddy County have a custom of arresting and prosecuting individuals without sufficient evidence to convict a person for violating a restraining order.

98.     Defendant Cage and Defendant Eddy County have a custom and/or policy of negligently training and supervising their deputies to properly investigate a potential violation of a restraining order, and properly read a restraining order, because of their "pro-arrest" policy.

99.     Defendant Cage's and Defendant Eddy County's policies and/or customs resulted in the arrest of Plaintiff.

100.     Defendant Cage is the policymaker for Defendant Eddy County and the ECSO regarding law enforcement policies and customs.

101. Defendant Cage approved all policies and/or customs that resulted in the violations of Plaintiff's constitutional rights.

102. Defendant Cage and Defendant Eddy County failed to properly train and supervise Defendant Rostro and Defendant Threlkeld.

103. Defendant Eddy County and Defendant Cage negligently hired and retained Defendant Rostro.

104. As a direct and proximate cause of Defendants Eddy County's, Rostro's, Threlkeld's, and Cage's actions, Plaintiff suffered and continues to suffer substantial past and future damages.

105. Because Defendants Eddy County's, Rostro's, Threlkeld's, and Cage's actions were motivated by evil motive or intent, and/or involved a reckless or callous indifference to the federally protected rights of Plaintiff, an award of punitive damages is appropriate to the fullest extent permitted by law.

106. Pursuant to *Monell* Defendant Eddy County, through its policymaker, Defendant Cage, is liable for the damages suffered by Plaintiff.

107. Pursuant to *Monell* Defendant Cage is also liable for the damages suffered by Plaintiff.

### COUNT III
### FOURTH AMENDMENT CLAIM AGAINST ALL DEFENDANTS
### (FALSE IMPRISONMENT)

108. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

109. At all relevant times, Defendants Eddy County, Rostro, Threlkeld, and Cage were acting under color of state law.

110.     Defendants Eddy County, Rostro, Threlkeld, and Cage falsely imprisoned Plaintiff without his consent and with knowledge that they did not have lawful authority to do so.

111.     Defendants Eddy County, Rostro, Threlkeld, and Cage failed to properly investigate whether there was any evidence of a crime committed by Plaintiff.

112.     As a direct and proximate cause of Defendants Eddy County's, Rostro's, Threlkeld's, and Cage's actions, Plaintiff was arrested and charged with aggravated stalking and violating a restraining order and was eventually convicted.

113.     As a direct and proximate cause of Defendants Eddy County's, Rostro's, Threlkeld's, and Cage's actions, Plaintiff spent 650 days imprisoned.

114.     As a direct and proximate cause of Defendants Eddy County's, Rostro's, Threlkeld's, and Cage's actions, Plaintiff suffered and continues to suffer substantial past and future damages, including, but not limited to, severe emotional distress, mental anguish, embarrassment, and humiliation.

115.     Defendant Cage and Defendant Eddy County have a written "pro-arrest" policy to arrest and prosecute any alleged violations of a restraining order.

116.     As a result of this policy, Defendant Cage and Defendant Eddy County have a custom of arresting individuals without probable cause of a violation of a restraining order.

117.     As a result of this policy, Defendant Cage and Defendant Eddy County have a custom of arresting and prosecuting individuals without sufficient evidence to convict a person for violating a restraining order.

118.     Defendant Cage and Defendant Eddy County have a custom and/or policy of negligently training and supervising their deputies to properly investigate a potential violation of a restraining order, and properly read a restraining order, because of their "pro-arrest" policy.

119.     Defendant Cage's and Defendant Eddy County's policies and/or customs resulted in the arrest of Plaintiff.

120.     Defendant Cage is the policymaker for Defendant Eddy County and the ECSO regarding law enforcement policies and customs.

121.     Defendant Cage approved all policies and/or customs that resulted in the violations of Plaintiff's constitutional rights.

122.     Defendant Cage and Defendant Eddy County failed to properly train and supervise Defendant Rostro and Defendant Threlkeld as demonstrated by the arrest, imprisonment, prosecution, and wrongful conviction of Plaintiff.

123.     Defendant Eddy County and Defendant Cage negligently hired and retained Defendant Rostro and Defendant Threlkeld as demonstrated by hiring retaining them without the proper qualifications to become deputies and detectives for ECSO and their questionable character and dishonesty as demonstrated by their past disciplinary history at their former and current employment.

124.     As a direct and proximate cause of Defendants Eddy County's, Rostro's, Threlkeld's, and Cage's actions, Plaintiff suffered and continues to suffer substantial past and future damages.

125.     Because Defendants Eddy County's, Rostro's, Threlkeld's, and Cage's actions were motivated by evil motive or intent, and/or involved a reckless or callous indifference to the federally protected rights of Plaintiff, an award of punitive damages is appropriate to the fullest extent permitted by law.

126.     Pursuant to *Monell* Defendant Eddy County, through its policymaker, Defendant Cage, is liable for the damages suffered by Plaintiff.

127. Pursuant to *Monell* Defendant Cage is also liable for the damages suffered by Plaintiff.

## COUNT IV
## NEW MEXICO TORT CLAIMS ACT AGAINST ALL DEFENDANTS
### (MALICIOUS ABUSE OF PROCESS)

128. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

129. Defendants Eddy County, Rostro, Threlkeld, and Cage misused the legal process against Plaintiff.

130. Defendants Eddy County, Rostro, Threlkeld, and Cage actively participated in misusing the legal process against Plaintiff.

131. Defendants Eddy County, Rostro, Threlkeld, and Cage had all necessary information available to them to determine whether Plaintiff was innocent but failed to conduct a reasonable investigation, and thus, did not have a reasonable belief, based on the facts known, that the claims against Plaintiff could be established to the satisfaction of a court or a jury.

132. Defendants Eddy County, Rostro, Threlkeld, and Cage primary motive in misusing the legal process was to accomplish an illegitimate end, *i.e.*, prosecute and convict Plaintiff despite his innocence.

133. Defendants Eddy County, Rostro, Threlkeld, and Cage primary motive in actively participating in misusing the legal process was to accomplish an illegitimate end, *i.e.*, prosecute and convict Plaintiff despite his innocence.

134. The conduct of Defendants Eddy County, Rostro, Threlkeld, and Cage caused damages to Plaintiff.

## COUNT V
## NEW MEXICO TORT CLAIMS ACT AGAINST ALL DEFENDANTS
### (FALSE ARREST)

135.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

136.    Defendants Eddy County, Rostro, Threlkeld, and Cage falsely arrested Plaintiff without probable cause of a crime.

137.    Defendants Eddy County, Rostro, Threlkeld, and Cage failed to investigate whether there was any evidence of a crime committed specifically by Plaintiff.

138.    Defendants Eddy County, Rostro, Threlkeld, and Cage intentionally arrested Plaintiff against his will in violation of the law without probable cause.

139.    As a direct and proximate cause of Defendants Eddy County's, Rostro's, Threlkeld's, and Cage's actions, Plaintiff was arrested and charged with aggravated stalking and violating a restraining order, and eventually convicted.

140.    As a direct and proximate cause of Defendants Eddy County's, Rostro's, Threlkeld's, and Cage's actions, Plaintiff spent 650 days in jail.

141.    As a direct and proximate cause of Defendants Eddy County's, Rostro's, Threlkeld's, and Cage's  actions, Plaintiff suffered and continues to suffer substantial past and future damages, including, but not limited to, severe emotional distress, mental anguish, embarrassment, and humiliation.

142.    Defendant Eddy County is liable for the actions of Defendants Rostro, Threlkeld, and Cage under *respondeat superior*.

**COUNT VI**
**NEW MEXICO TORT CLAIMS ACT AGAINST ALL DEFENDANTS**
**(FALSE IMPRISONMENT)**

143.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

144.    Defendants Eddy County, Rostro, Threlkeld, and Cage falsely imprisoned Plaintiff without his consent and with knowledge that they did not have lawful authority to do so.

145.     Defendants Eddy County, Rostro, Threlkeld, and Cage failed to investigate whether there was any evidence of a crime committed specifically by Plaintiff.

146.     As a direct and proximate cause of Defendants Eddy County's, Rostro's, Threlkeld's, and Cage's actions, Plaintiff was arrested and charged with aggravated stalking and violating a restraining order, and eventually convicted.

147.     As a direct and proximate cause of Defendants Eddy County's, Rostro's, Threlkeld's, and Cage's actions, Plaintiff spent 650 days in jail.

148.     As a direct and proximate cause of Defendants Eddy County's, Rostro's, Threlkeld's, and Cage's actions, Plaintiff suffered and continues to suffer substantial past and future damages, including, but not limited to, severe emotional distress, mental anguish, embarrassment, and humiliation.

149.     Defendant Eddy County is liable for the actions of Defendants Rostro, Threlkeld, and Cage under *respondeat superior*.

## COUNT VII
## NEW MEXICO TORT CLAIMS ACT AGAINST DEFENDANTS EDDY COUNTY AND CAGE
## (NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION)

150.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

151.     Defendants Eddy County and Cage were in charge of hiring, supervising, training and retaining Defendants Rostro and Threlkeld.

152.     Defendants Eddy County and Cage owed a duty to Plaintiff to adequately hire, train, supervise, and retain Defendants Rostro and Threlkeld to reasonably protect and ensure that individuals and citizens in Eddy County, including Plaintiff, are not falsely arrested, imprisoned, prosecuted, and convicted for crimes they did not commit.

153.     Defendants Rostro's and Threlkeld's actions constitute Defendants Eddy County's and Cage's negligent hiring, supervision, training, and retention of these Defendants.

154.     By hiring Defendant Rostro and Threlkeld, unqualified and incompetent persons to work as deputies at ECSO, by failing to supervise and train Defendant Rostro and Threlkeld so that they would not falsely arrest, imprison, prosecute, and convict innocent individuals for crimes they did not commit. or deprive Plaintiff of his civil rights, and by the continued retention of Defendant Rostro and Threlkeld, Defendants Eddy County and Cage breached their duty to Plaintiff.

155.     Defendants Eddy County's and Cage's negligent hire, training, and supervision, and the retention of Defendant Rostro and Threlkeld, directly and proximately caused damages to Plaintiff.

156.     Plaintiff suffered damages as a result of Defendants Rostro's and Threlkeld's actions and Defendants Eddy County's and Cage's negligent hiring, supervision, training, and retention of Defendants Rostro and Threlkeld.

157.     Defendant Eddy County is liable for the actions of Defendants Rostro, Threlkeld, and Cage under *respondeat superior*.

## JURY DEMAND

Plaintiff respectfully demands a jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on his behalf and against Defendants for:

A.  Compensatory damages;

B.  Punitive damages;

22

C. Past and future pain, suffering, and mental anguish;

D. Pre-judgment interest;

E. Post-judgment interest;

F. Reasonable attorneys' fees and costs incurred in bringing this action, including expert

fees, pursuant to 42 U.S.C. § 1988; and

G. Such other and further relief as the Court deems just.

DATED: April 24, 2023                    Respectfully Submitted,

*/s/ Ramón A. Soto*

Ramón A. Soto
**THE SOTO LAW OFFICE, LLC**
300 Central Ave. SW
Suite 2500W
Albuquerque, New Mexico 87102
Office: (505) 273-4062
Fax: (505) 494-1092
ramon@sotolawoffice.co

*Attorney for Plaintiff Jason Sanchez*